## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**CV 12**                                    **4622**

NEIL and KRISTINE MARKEY,
individually, and on behalf of all others
similarly situated,

CASE NO.:

**CLASS ACTION
COMPLAINT**

                    Plaintiff,

v.

**JURY TRIAL DEMANDED**

LAPOLLA INDUSTRIES, INC., a Delaware
corporation; LAPOLLA INTERNATIONAL,
INC., a Delaware corporation;
and DELFINO INSULATION COMPANY,
INC., a New York Corporation.

                    Defendants.

_____/

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 23, NEIL and KRISTINE MARKEY (hereinafter "The

Markeys" or "Plaintiffs"), bring suit on behalf of themselves and all other similarly situated

owners and residents of real property containing defective spray polyurethane foam insulation

(hereinafter "SPF") that was designed, manufactured, labeled, imported, distributed, delivered,

procured, supplied, marketed, inspected, installed, or sold by the Defendants.  SPF is used as a

spray-on insulation system in the walls and attics (and similar spaces) of residential structures.

In order to accomplish an effective class structure, the class representatives are pursuing a

nationwide class action against LAPOLLA INDUSTRIES, INC. (hereinafter "Lapolla") and

LAPOLLA INDUSTRIES INTERNATIONAL, INC. (hereinafter "Lapolla International") the

manufacturer of the spray polyurethane foam insulation located in Plaintiffs' and Class

Members' homes.  Subordinate to this national class action, the class representatives are

participating in a subclass asserting claims against one of the manufacturer's authorized/certified

distributor/installer, DELFINO INSULATION COMPANY, INC. (hereinafter, "Delfino"), a New York corporation. Each of the Defendants in this action is liable for damages incurred by Plaintiffs and Class Members due to their role in the design, manufacture, labeling, importing, distributing, delivery, supply, procuring, marketing, inspecting, installing, or sale of the problematic SPF at issue in this litigation.

## JURISDICTION, PARTIES AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiff and certain of the Defendants in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      For the subclass, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events giving rise to these claims occurred in the Eastern District of New York; Defendants and/or their agents were doing business in New York; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

4.      This Court has personal jurisdiction over the Defendants pursuant to New York CPLR §302(a)(1) because the Defendants transact business within the state and/or contract to supply goods or services in the state. Personal jurisdiction is also appropriate pursuant to New York CPLR §302 (a)(2) because Defendants committed tortious acts within the New York.

## PLAINTIFFS

5.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named Plaintiffs.

6.      The Markeys are residents of Stony Brook, Suffolk County, New York, who had Defendant Lapolla's Foam-LOK Spray Foam Insulation installed in their home by Delfino in March of 2012.

## DEFENDANTS

8.      Defendant Lapolla is a Delaware corporation with its principle place of business in Houston, Texas.  It creates, designs, manufactures, markets and distributes the SPF known as "FOAM-LOK" spray polyurethane foam insulation, throughout the United States and other territories.  In fact, Lapolla is recognized as the largest distributor of SPF for roofing and insulation in North America. Its products reach real property owners and residents through a network of authorized distributors and installers who are authorized and certified by Lapolla to market its products and who are trained by Lapolla on the proper installation of its products, and Lapolla trained and certified Delfino in the use and application of the SPF product used in Plaintiffs' and Class Members' homes.

9.      Defendant Lapolla International is a Delaware corporation with its principle place of business in Houston, Texas.  It creates, designs, manufactures, markets and distributes the SPF known as "FOAM-LOK" spray polyurethane foam insulation, throughout the world.

10.     Defendant Delfino is a New York corporation with its principal place of business in New York.  It does business in the State of New York, with six store locations in the state. Delfino's specializes in insulation work for residential structures.  Delfino is an authorized

3

distributor/installer of Lapolla's SPF insulation. Upon information and belief, Delfino placed the subject SPF applied in Plaintiffs' and Class Members' homes into the stream of commerce.

## GENERAL ALLEGATIONS REGARDING PROBLEMATIC SPF

11.     Lapolla's Foam-LOK SPF, when applied as insulation, is a polyurethane open cell semi-rigid foam created by the chemical reaction of two sets of highly toxic compounds brought together in a spraying apparatus handled by an installer who applies the material into the attic (or similar) areas of a subject property while wearing protective gear and a breathing apparatus. When applied, the resulting polyurethane foam is supposed to become inert and non-toxic, but SPF remains toxic after installation because either, as designed, it is impossible to become inert and non-toxic even under optimal conditions; or proper installation (and thus non-toxicity) is nearly impossible given the exacting set of installation requirements and inadequate training and installer certification methods.

12.     Lapolla's Foam-LOK SPF is a semi-rigid plastic foam resulting from the reaction of isocyanate (Part A) and a resin (Part B). The most important reaction of the isocyanate is with a polyol to produce polyurethane. In addition, the isocyanate reacts with the water in the resin producing carbon dioxide causing the liquid to expand exponentially from its original volume. The "Part B" resin of Foam-LOK products contain (apart from the polyol chemical compound that is foundation of its polymer structure): water, as what is known as the "blowing agent" to create carbon dioxide and cause expansion; catalyst chemicals; surfactant chemicals to control the number and structure of the open cells; and flame retardants.

13.     Due to the defective nature of Lapolla's design and manufacture of SPF, the defective nature of Lapolla's training of distributors/installers, and the defective nature of Lapolla's warnings, labeling and training materials, the application and installation of SPF

4

results in the installation of an SPF that causes property damage and health hazards to occupants of installed homes such that the only remedy is the complete removal of the SPF.

14.     Indeed, Lapolla recognizes that its product is unstable and prone to failure because in its own Home Brochures, Design Brochures, and Material Safety Data Sheet (MSDS), it emphasizes the importance of abiding by its exacting installation techniques. These include a variety of conditions that an installer must be on the alert for, as well as a complicated set of instructions on temperature controls/conditions and spray machine maintenance and operation — deviations from which will cause the SPF installation to fail and create a noxious substance. Additionally, the Lapolla brochures and MSDS stress that the A component contains isocyanate groups which can emit vapors which people must avoid breathing, thus necessitating respiratory protection during installation.

15.     Although Lapolla markets its SPF's as "green" and non-toxic safe products, they are really complex toxic chemical compounds that, due to the defective nature of Lapolla's design, manufacture, materials and training, combine to create a toxic substance that continues to "off-gas" after installation. The off-gassing creates irritants that cause headaches and other neurological issues, and eye, nose and throat irritations as well as respiratory issues in the occupants of homes with the defective SPF applied.

16.     "Part A" of Defendants' SPF contains diphenylmethane diisocyanate (MDI), which is known as an "Aromatic Isocyanate" and is classified as hazardous by OSHA, and exposure can cause severe respiratory injuries as well as irritation to eyes and skin. MDI is a known sensitizing toxicant to humans, meaning that once a person becomes sensitized to MDI there may be no safe exposure level.

17. Lapolla refers to its B component as its "cookie dough", and does not disclose its specialized chemistry.

18. Lapolla's flame retardant in its Part B resin includes Chlorinated Tris, a known carcinogen that has been banned in children's products and is required to be disclosed in a product's material safety data sheet, and it is not. Testing of the air done at Plaintiffs' home after the SPF installation has indicated the presence of Chlorinated Tris.

19. SPF compounds typically contain known carcinogens such as Formaldehyde (and other Aldehydes) and other Volatile Organic Compounds ("VOCs") that can be emitted after installation. Testing of the air done at Plaintiffs' home after the SPF installation has indicated elevated levels of VOCs including Ether, Ethanediamine, and Acetaldehyde.

20. Lapolla is aware that its SPF consists of toxic elements and that, even when installed according to their standards, SPF remains toxic and hazardous to residents of the homes where SPF is installed. The chemical creation process of polyurethane foam requires strict control and monitoring even in industrial conditions/factories, to avoid toxic dangers to workers and environmental exposure/release. Thus, its creation and application in residential attics by inadequately trained "approved" installers, with no sure temperature or equipment controls is completely suspect.

21. SPF is unfit for the purpose it is intended for because of the damage it causes and/or because its use is has so inconvenienced Plaintiffs that they would not have purchased SPF had the damaging side effects been disclosed to them.

22. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' problematic SPF and the harmful effects of the gases it emits long after installation.

23.     Defendants tortiously manufactured, labeled, exported, imported, distributed, delivered, procured, supplied, inspected, installed, marketed and/or sold the problematic SPF, which was unfit for its intended purpose and unreasonably dangerous in its ordinary use in that the SPF resulted in off-gassing, damaging the real and personal property of Plaintiffs and Class Members and/or caused personal injuries resulting in eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm.

24.     Defendants recklessly, wantonly, and/or negligently manufactured, labeled, exported, imported, distributed, delivered, procured, supplied, inspected, installed, marketed and/or sold the problematic SPF at issue in this litigation.

25.     Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the problematic SPF at issue in this litigation.

26.     Defendants recklessly, wantonly and/or negligently created faulty and/or inadequate warnings, labeling, and installer manuals, as well as implemented faulty and/or inadequate training of installers for the purposes of selling, marketing and distributing the problematic SPF at issue in this litigation.

27.     As a direct and proximate result of Defendants' problematic and unfit SPF and the harmful effects of the gases emitting from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

28.     As a direct and proximate result of Defendants' problematic and unfit SPF and the harmful effects of the gases emitting from these products, Plaintiffs and Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy the effects of toxic SPF, as well as remove

and replace SPF and other property that has been impacted by SPF; loss of use and enjoyment of their home and property including costs and expenses associated with the need for other temporary housing; and/or damages associated with personal injuries.

29.     As a direct and proximate result of Defendants' problematic and unfit SPF and the harmful effects of the gases emitting from these products, Plaintiffs and the Class Members have been exposed to harmful gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, recision of contracts, the ordering of emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.

30.     The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment.  By failing to disclose a known defect to Plaintiffs and Class Members, and misrepresenting the nature of their product as safe for its intended use, Defendants actively concealed from Plaintiffs and Class Members the true risks associated with their SPF.

31.     Plaintiffs and Class Members could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

32.     In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their SPF. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiffs and Class Members.

33.    Plaintiffs and Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

## CLASS ACTION ALLEGATIONS

### The Manufacturer Class

34.    The representative Plaintiffs assert claims against the manufacturer defendant, Lapolla, and thus assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against Lapolla. The Plaintiff defines the class to be as follows:

> All owners and residents (past or present) of real property located in the United States containing problematic SPF manufactured, sold, distributed, and/or supplied by Lapolla Industries, Inc.

### The Distributor/Supplier/Installer Subclass

35.    The representative Plaintiffs assert claims against the Defendant distributors, suppliers, importers/brokers, and/or installers, namely Delfino Insulation Company, Inc., and thus asserts a subclass pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Delfino. The Plaintiff defines the subclass to be as follows:

> All owners and residents (past or present) of real property located in the United States containing the problematic SPF that was sold, distributed, supplied, marketed, inspected, imported, exported, brokered, delivered or installed by Delfino Insulation Company, Inc.

### The New York Subclasses

36.    The representative Plaintiffs also assert two New York subclasses to coincide with the national classes asserted against the Defendants, and defines these subclasses as follows:

All owners and residents (past or present) of real property located in the State of New York containing problematic SPF manufactured, sold, distributed, and/or supplied by Lapolla Industries, Inc. and Lapolla Industries International, Inc.

-AND-

All owners and residents (past or present) of real property located in the State of New York containing the problematic SPF that was sold, distributed, supplied, marketed, inspected, imported, exported, brokered, delivered or installed by Delfino Insulation Company, Inc.

## General Class Allegations and Exclusions from the Class Definitions

37.     The following Persons shall be excluded from the Class and Subclasses: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

38.     Upon information and belief, the problematic and unreasonably dangerous SPF in Plaintiffs' homes or other structures has been installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members. Therefore, the Class and Subclasses are sufficiently numerous such that the joinder of all members of the Class and Subclasses in a single action is impracticable.

39.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class and/or Subclasses. Among these common questions of law and fact are the following:

a.      whether Defendants' SPF products are problematic and/or unfit for their intended purpose;

10

b.   whether Defendants tortiously manufactured, labeled, exported, imported, distributed, delivered, procured, supplied, inspected, installed, marketed, labeled and/or sold problematic SPF products;

c.   whether Defendant Lapolla inadequately trained and supervised their "approved" and authorized distributors/installers and provided inadequate training materials and processes;

d.   whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

e.   whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct

40.   The legal claims of named Plaintiffs are typical of the legal claims of other Class and Subclass Members. Additionally, for each of the subclasses that named Plaintiffs seek to participate in, the legal claims of the named Plaintiffs are typical of the legal claims of other Subclass Members. Named Plaintiffs have the same legal interests and need for legal remedies as other Class and/or Subclass Members.

41.   The named Plaintiffs are adequate representatives of the Class and Subclasses in which they participate, together with their legal counsel, and they will fairly and adequately protect the interests of Class and Subclass Members. Named Plaintiffs have no known conflicts with the Class or Subclasses and is committed to the vigorous prosecution of this action.

42.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products. Counsel will fairly and adequately protect the interests of the Classes and/or Subclasses.

11

43.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class and/or Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass member that would establish incompatible standards of conduct for the party opposing the Class and Subclass; or adjudications with respect to individual Class and Subclass members that, as a practical matter, would be dispositive of the interests of the other Class and Subclass members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

44.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class and/or Subclass, so that final injunctive relief is appropriate respecting the Class and/or Subclass as a whole.

45.     A class action is superior in this case to other methods of dispute resolution. The Class and Subclass members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class and Subclass Members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiff's legal claims are properly certified pursuant to Rule 23(b)(3).

46.     The issues particularly common to the Class and Subclass members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as

resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

47.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

48.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, distributing, delivering, training, procuring, supplying, inspecting, installing, marketing, labeling and/or selling this SPF, to prevent the SPF from having the defects set forth herein.

49.    Defendants also owed a duty to Plaintiffs and Class Members to adequately warn of their failure to do the same; instruct the Plaintiffs and Class Members of the Defects associated with SPF; not to misrepresent that SPF was safe for its intended purpose when, in fact, it is not; and not to conceal information from Plaintiffs and Class Members regarding reports of adverse effects associated with SPF installation.

50.    Defendants also owed a duty to Plaintiffs and Class Members to properly train their employees, representatives, and/or agents in the formulation and installation process of the subject SPF, because, at the least, Defendants knew or should have known that the volatile chemical processes involved required strict controls; and to receive proper training in same, prior to the application of SPF insulation.

51.    Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

13

52.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, distributing, delivering, training, procuring, supplying, inspecting, installing, marketing, labeling and/or selling of this SPF.

53.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the problematic nature of the SPF. Defendants, through the exercise of reasonable care, knew or should have known the nature of the problematic SPF and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

54.     Defendants breached their duty to Plaintiffs and Class Members to properly train their employees, representatives, and/or agents in the formulation and installation process of the subject SPF, or to receive proper training in same, prior to the application of SPF insulation, as no such proper training occurred.

55.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall SPF from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with SPF, upon learning it had been sold in an unreasonably dangerous condition.

56.     Given the defect in the Defendants' SPF, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

57.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
### STRICT LIABILITY
#### (All Defendants)

14

58.     Plaintiff adopts and restates paragraphs 1–46 as if fully set forth herein.

59.     At all times relevant hereto, Defendants were in the business of designing, manufacturing, distributing, delivering, training, procuring, supplying, inspecting, marketing, labeling, installing, and/or selling SPF for sale to the general public.

60.     The SPF, including that installed in the homes of Plaintiffs and Class Members, was placed into the stream of commerce by Defendants.

61.     Defendants knew that the subject SPF would be installed without inspection by homeowners and residents (ultimate consumers).

62.     Defendants intended that the SPF reach the ultimate consumers, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

63.     When installed in Plaintiffs' and Class Members' homes, the components of SPF were in substantially the same condition as they were in when Defendants manufactured, sold, and/or delivered it.

64.     At all times relevant hereto the subject SPF was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

65.     The subject SPF was not misused or altered by any third parties.

66.     The Defendants' SPF was improperly manufactured, designed, inspected, tested, marketed, distributed, procured, labeled, installed, and sold.

67.     The design impropriety was in designing SPF such that it allows high levels of VOCs, including carcinogens, to be emitted by the SPF, even when installed under optimal conditions.

15

68. The manufacturing impropriety was in improperly selecting, testing, inspecting, making, assembling, and using SPF (and its sub components) with high levels of VOCs, including carcinogens, which are emitted by the SPF, even when installed under optimal conditions.

69. The SPF was also problematic because it was improperly exported, imported, distributed, delivered, procured, supplied, inspected, marketed, and/or sold in an unacceptable condition, as described above.

70. The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, procuring, supplying, labeling, installing and selling of the SPF rendered it unsafe and unreasonably dangerous for its intended use by and to Plaintiffs and Class Members.

71. The SPF is also problematic and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiffs and Class Members of their negligent design, inspection, testing, manufacturing, marketing, labeling, and selling of the SPF.

72. Plaintiffs and Class Members were not aware of the unreasonably dangerous propensities and problematic condition of the SPF, nor could Plaintiffs and Class Members, acting as reasonably prudent people discover that Defendants' SPF was problematic, as set forth herein, or perceive its danger.

73. Defendants' problematic SPF was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

74. Defendants' problematic SPF's benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

75.     The harmful and dangerous propensities of SPF, as well as Defendants' failure to adequately warn Plaintiffs and Class Members of these propensities, rendered the SPF unreasonably dangerous and was the direct and proximate cause of damages and/or personal injuries to Plaintiffs and Class Members.

## COUNT III
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

76.     Plaintiff adopts and restates paragraphs 1–46 as if fully set forth herein.

77.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

78.     At the time Defendants utilized, supplied, inspected, and/or sold this SPF for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the SPF would be installed in structures owned by Plaintiffs and Class Members for use as a building insulation material/system, and expressly or impliedly warranted the product to be fit for that use.

79.     Defendants placed the subject SPF products into the stream of commerce in a problematic condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

80.     SPF is unfit, problematic and not merchantable for its intended purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased/installed SPF had the side effects been disclosed by Defendants.

81.     The Defendants breached their warranty because SPF was not fit and safe for the particular purposes for which the goods were required to be fit and safe for, so as to be installed

17

in structures owned by Plaintiffs and Class Members as a building material, due to the problems set forth herein.

82.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

83.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have suffered harm and damages and/or personal injuries as described herein.

## COUNT IV
## UNJUST ENRICHMENT
### (All Defendants)

84.     Plaintiffs adopt and restate paragraphs 1–46 as if fully set forth herein.

85.     Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' problematic SPF, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

86.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

87.     Defendants by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VI
## VIOLATION OF CONSUMER PROTECTION ACTS
### (All Defendants)

88.     Plaintiff adopts and restates paragraphs 1–46 as if fully set forth herein.

18

89.     This is a claim for relief under *New York General Business Law §349* and *§350*, as well as the various Consumer Protection Acts of the jurisdictions in which affected properties of Class Members are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); N.C.G.S. § 75-1.1, *et seq.* (North Carolina Consumer- Protection Act); O.C.G.A. § 10-1-390, *et seq.* (The Georgia Fair Business Practices Act of 1975); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41. *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); and Miss. Code Ann. § 75-24-1. *et seq.* (Mississippi Consumer Protection Act).

90.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of problematic SPF constitute violation of the provisions of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts.

91.     The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint were directed at consumers, and thus likely and reasonably foreseeable to mislead Plaintiffs and members of the Subclass acting reasonably in their reliance on defendant's acts and practices, and to their detriment.

92.     The Defendants engaged in the unconscionable, unfair, and deceptive acts or practices set forth in this Complaint in the conduct of trade or commerce.

93.     The Defendants' misrepresentations or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect

the purchasing decisions or conduct of consumers, including Plaintiffs and Class Members regarding Defendants' products.

94.     The Defendants' business practices, in its advertising, marketing, packaging, and sales of SPF as a safe, "green", non-toxic, cost-saving, and "contribut[ing] to a healthier indoor environment" is an unconscionable, unfair, and deceptive act or practice, in violation of *New York Gen. Bus. Law §349* and *§350* (and other Consumer Protection Acts), in that it (1) offends established public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiffs and Class Members who purchased Defendants' SPF system because of Defendants' representations and conduct.

95.     Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts and are entitled to relief.

96.     As a direct and proximate cause of Defendants' violations of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts, Plaintiffs and Class Members have incurred harm and damages as described herein, and are entitled to recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law, including *New York Gen. Bus. Law §349* and *§350*, and the various Consumer Protection Acts.

## COUNT VI
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
## (All Defendants)

97.     Plaintiffs adopt and restate paragraphs 1–46 as if fully set forth herein.

98.    Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

99.    Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if Defendants are not ordered to recall and remove the problematic SPF owned by Plaintiffs and Class Members and replace it with a proper, non-toxic insulation system.

100.    Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that Defendants be ordered to: (1) recall the problematic SPF; (2) remediate, repair and/or replace the SPF in Plaintiffs' and Class Members' homes or other structures upon proof by the Defendants of the feasibility of such remedy or repair; (3) cease and desist from misrepresenting to the Class and the general public that SPF is not problematic and/or unreasonably dangerous as alleged herein; (4) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with SPF; and (5) create, fund, and support a medical monitoring program.

101.    Until Defendants' problematic SPF has been removed and remediated, Defendants must provide continued air monitoring in the structures owned by Plaintiffs and Class Members.

102.    Plaintiffs and Class Members have been exposed to greater than normal levels of toxic gases/compounds as a result of exposures to Defendants' problematic and unfit SPF and have suffered personal injuries as a result.

103.    The toxic gases/compounds which exit from the Defendants' SPF and to which Plaintiffs and Class Members have been exposed are proven unreasonably dangerous.

104.  Plaintiffs' and Class Members' exposures were caused by the Defendants' negligent or otherwise tortious conduct.

105.  Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

106.  The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the problematic and unfit SPF.

107.  As a proximate result of their exposure to noxious compounds from Defendants' problematic and unfit SPF, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

108.  Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

109.  The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class and Subclass Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demands upon Defendants jointly and severally for:

      a.    an order certifying the case as a class action;

b.       an order certifying the Class and each of the Subclasses;

c.       an order appointing Plaintiffs as the Class Representatives of the Class;

d.       an order appointing undersigned counsel and their firms as counsel for the

Class;

e.       actual, compensatory and statutory damages;

f.       punitive damages as allowed by law;

g.       pre and post-judgment interest as allowed by law;

h.       injunctive relief;

i.       an award of attorneys' fees as allowed by law;

j.       an award of taxable costs; and

k.       any and all such further relief as this Court deems just and proper.

Dated:  September 14, 2012

Respectfully Submitted,

MORELLI RATNER PC
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:    (212) 751-9800
Facsimile:    (212) 751-0046

By: _____
Benedict P. Morelli
bmorelli@morellilaw.com
New York Bar No.: BM7597
David S. Ratner
dratner@morellilaw.com
New York Bar No.: DR7758
David T. Sirotkin
dsirotkin@morellilaw.com
E.D.N.Y. Bar ID: DS4863

David C. Rash
david@alterslaw.com
Florida Bar No.: 0977764
Jeremy W. Alters
jeremy@alterslaw.com
Florida Bar No.: 111790
Matthew T. Moore
matthew@alterslaw.com
Florida Bar No.: 70034

ALTERS LAW FIRM, P.A.
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:     (305) 571-8550
Facsimile:     (305) 571-8558


AND

Vincent J. Pravato
vince@wolfandpravato.com
Florida Bar No.: 83127
LAW OFFICES OF WOLF & PRAVATO
2101 West Commercial Boulevard
Suite 1500
Fort Lauderdale, Florida 33309
Telephone:     (954) 522-5800
Facsimile:     (954) 767-0960

Attorneys for Plaintiff