## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

NEIL and KRISTINE MARKEY,
individually, and on behalf of all others
similarly situated,

               Plaintiff,

v.

LAPOLLA INDUSTRIES, INC., a Delaware
corporation; LAPOLLA INTERNATIONAL,
INC., a Delaware corporation;
and DELFINO INSULATION COMPANY,
INC., a New York Corporation.

               Defendants.              /

CASE NO.:

**AMENDED CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELEMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 23, NEIL and KRISTINE MARKEY (hereinafter "The Markeys" or "Plaintiffs"), bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective spray polyurethane foam insulation (hereinafter "SPF") that was designed, manufactured, labeled, imported, distributed, delivered, procured, supplied, marketed, inspected, installed, or sold by the Defendants.  SPF is used as a spray-on insulation system in the walls and attics (and similar spaces) of residential structures. In order to accomplish an effective class structure, the class representatives are pursuing a nationwide class action against LAPOLLA INDUSTRIES, INC. and LAPOLLA INDUSTRIES INTERNATIONAL, INC. (hereinafter "Lapolla") the manufacturer of the spray polyurethane foam insulation located in Plaintiffs' and Class Members' homes.  Subordinate to this national class action, the class representatives are participating in a subclass asserting claims against one of the manufacturer's authorized/certified distributors/installers, DELFINO INSULATION

COMPANY, INC. (hereinafter, "Delfino"), a New York corporation.  Each of the Defendants in this action is liable for damages incurred by Plaintiffs and Class Members due to their role in the design, manufacture, labeling, importing, distributing, delivery, supply, procuring, marketing, inspecting, installing, or sale of the problematic SPF at issue in this litigation.

## JURISDICTION, PARTIES AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1711, *et. seq.*  The Plaintiffs and certain of the Defendants in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      For the subclass, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because  a substantial part of the events giving rise to these claims occurred in the Eastern District of New York; Defendants and/or their agents were doing business in New York; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

## PLAINTIFFS

5.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named Plaintiffs.

6.      The Markeys are residents of Stony Brook, Suffolk County, New York. Defendant Delfino installed Defendant Lapolla's Foam-LOK Spray Foam Insulation in the Plaintiffs' home in Stony Brook, New York in March 2012.  The Markeys had Lapolla's SPF

installed in a large addition to their home which includes a den and dining area, and which involved copious amounts of time and money to construct. The home addition also increased the Markeys' property tax liability by thousands of dollars per year. The Defendants' hazardous, defective, and unfit SPF has rendered the Markeys' home addition completely unusable, as they have been forced to seal off the addition in order to limit their exposure to the SPF's odor and continued off-gassing of hazardous compounds and toxins. Further, Plaintiffs have spent thousands of dollars on post-installation indoor air quality testing and have received an estimate indicating that the removal of the defective SPF will be extremely costly.

## **DEFENDANTS**

7.      Defendant Lapolla is a Delaware corporation with its principle place of business in Houston, Texas. It creates, designs, manufactures, markets and distributes the SPF known as "FOAM-LOK" spray polyurethane foam insulation, throughout the United States and other territories. In fact, Lapolla is recognized as the largest distributor of SPF for roofing and insulation in North America. Its products reach real property owners and residents through a network of authorized distributors and installers who are authorized and certified by Lapolla to market its products and who are trained by Lapolla on the proper installation of its products, and Lapolla trained and certified Delfino in the use and application of the SPF product used in Plaintiffs' and Class Members' homes.

8.      Defendant Lapolla International is a Delaware corporation with its principle place of business in Houston, Texas. It creates, designs, manufactures, markets and distributes the SPF known as "FOAM-LOK" spray polyurethane foam insulation, throughout the world.

9.      Defendant Delfino is a New York corporation with its principal place of business in New York. It does business in the State of New York, with six store locations in the state.

Delfino specializes in insulation work for residential structures. Delfino is an authorized distributor/installer of Lapolla's SPF insulation. Upon information and belief, Delfino placed the subject SPF applied in Plaintiffs' and Class Members' homes into the stream of commerce.

## GENERAL ALLEGATIONS REGARDING PROBLEMATIC SPF

10.   Lapolla's Foam-LOK SPF, when applied as insulation, is a polyurethane open cell semi-rigid foam created by the chemical reaction of two sets of highly toxic compounds brought together in a spraying apparatus handled by an installer who applies the material into the attic (or similar) areas of a subject property while wearing protective gear and a breathing apparatus. When applied, the resulting polyurethane foam is supposed to become inert and non-toxic, but SPF remains toxic after installation because either, as designed, it is impossible for it to become inert and non-toxic even under optimal conditions, or, as designed, proper installation (and thus non-toxicity) is nearly impossible given the exacting set of installation requirements and inadequate training and installer certification methods.

11.   Lapolla's Foam-LOK SPF is a semi-rigid plastic foam resulting from the reaction of isocyanate (Part A) and a resin (Part B). The most important reaction of the isocyanate is with a polyol to produce polyurethane. In addition, the isocyanate reacts with the water in the resin producing carbon dioxide causing the liquid to expand exponentially from its original volume. The "Part B" resin of Foam-LOK products contain (apart from the polyol chemical compound that is foundation of its polymer structure): water, as what is known as the "blowing agent" to create carbon dioxide and cause expansion; catalyst chemicals; surfactant chemicals to control the number and structure of the open cells; and flame retardants.

12.   Due to the defective nature of Lapolla's design and manufacture of SPF, the defective nature of Lapolla's training of distributors/installers, and the defective nature of

Lapolla's warnings, labeling, and training materials, the application and installation of SPF results in the installation of an SPF that causes property damage and health hazards to occupants of installed homes such that the only remedy is the complete removal of the SPF.

13.    Although Lapolla markets its SPF's as "green," non-toxic, safe products, they are really complex toxic chemical compounds that, due to the defective nature of Lapolla's design, manufacture, materials and training, combine to create a toxic substance that continues to "off-gas" after installation.   The off-gassing creates irritants that cause headaches and other neurological issues, and eye, nose, and throat irritations as well as respiratory issues in the occupants of homes in which the defective SPF has been applied.

14.    "Part A" of Defendants' SPF contains diphenylmethane diisocyanate (MDI), which is known as an "Aromatic Isocyanate" and is classified as hazardous by OSHA, and exposure can cause severe respiratory injuries as well as irritation to eyes and skin.  MDI is a known sensitizing toxicant to humans, meaning that once a person becomes sensitized to MDI there may be no safe exposure level.

15.    Lapolla refers to its "B" component as its "cookie dough," and does not disclose its specialized chemistry.

16.    Lapolla's flame retardant in its Part B resin includes Chlorinated Tris, a known carcinogen that has been banned in children's products and is required to be disclosed in a product's material safety data sheet, and it is not.

17.    Lapolla's SPF products also contain known carcinogens such as Formaldehyde (and other Aldehydes) and other Volatile Organic Compounds ("VOCs") that can be emitted after installation.

18.     In 2012, after the installation of Lapolla's Foam-LOK SPF in their home, Plaintiffs spent approximately $6,000 to have indoor air quality testing performed therein.  The air quality testing revealed the presence of VOCs including Methyl Morpholine, Bis Ether, Ethanediamine, Acetaldehyde, Tris Phosphate, and Tripophylene Glycol in Plaintiffs' home. The air quality testing reports indicated that these toxins were present in the Plaintiffs' home because of the SPF product's continual off-gassing.

19.     As a result of exposure to the toxins, carcinogens, and VOCs off-gassed by Lapolla's SPF after its installation in Plaintiffs' home, Plaintiff Kristine Markey experienced personal injury in the form of headaches and numbness in parts of her body.

20.     Lapolla is aware that its SPF consists of toxic elements and that, even when installed according to their standards, their SPF product remains toxic and hazardous to residents of the homes where SPF is installed.  The chemical creation process of polyurethane foam requires strict control and monitoring even in industrial conditions/factories, to avoid toxic dangers to workers and environmental exposure/release.  Thus, its creation and application in residential attics by inadequately trained "approved" installers, with no sure temperature or equipment controls, is completely suspect.

21.     SPF is unfit for its intended purpose because of the damage it causes and/or because its use has so inconvenienced Plaintiffs that they would not have purchased SPF had the damaging side effects been disclosed to them.

22.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendant Lapolla's problematic SPF and the harmful effects of the gases it emits long after installation.

23.     Defendant Lapolla tortiously manufactured, labeled, exported, imported, distributed, delivered, procured, supplied, inspected, installed, marketed and/or sold the problematic SPF, which was unfit for its intended purpose and unreasonably dangerous in its ordinary use in that the SPF resulted in off-gassing, damaging the real and personal property of Plaintiffs and Class Members and/or causing personal injuries resulting in eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm.

24.     As a direct and proximate result of the installation of Lapolla's problematic and unfit SPF and the harmful effects of the gases emitting from those products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and personal injury.

25.     As a direct and proximate result of the installation of Lapolla's problematic and unfit SPF and the harmful effects of the gases emitting from these products, Plaintiffs and Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to: costs of inspection; costs and expenses necessary to remedy the effects of toxic SPF, as well as to remove and replace SPF and other property that has been impacted by SPF; loss of use and enjoyment of their home and property including costs and expenses associated with the need for other temporary housing; and/or damages associated with personal injuries.

26.     As a direct and proximate result of the installation of Lapolla's problematic and unfit SPF and the harmful effects of the gases emitting from these products, Plaintiffs and the Class Members have been exposed to harmful gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, recision of contracts, the ordering of emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.

27.     The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment.  By failing to disclose a known defect to Plaintiffs and Class Members, and misrepresenting the nature of their product as safe for its intended use, Defendants actively concealed from Plaintiffs and Class Members the true risks associated with their SPF.

28.     Plaintiffs and Class Members could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

29.     In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their SPF. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiffs and Class Members.

30.     Plaintiffs and Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

## CLASS ACTION ALLEGATIONS

### The Manufacturer Class

31.     The representative Plaintiffs assert claims against the manufacturer defendant, Lapolla, and thus assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against Lapolla. The Plaintiff defines the class to be as follows:

> All owners and residents (past or present) of real property located in the United States containing problematic SPF manufactured, sold, distributed, and/or supplied by Lapolla.

**The Distributor/Supplier/Installer Subclass**

32.     The representative Plaintiffs assert claims against the Defendant distributors, suppliers, importers/brokers, and/or installers, namely Delfino Insulation Company, Inc., and thus asserts a subclass pursuant to Rules 23(a), (b)(l), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Delfino.  The Plaintiff defines the subclass to be as follows:

> All owners and residents (past or present) of real property located in the United States containing the problematic SPF that was sold, distributed, supplied, marketed, inspected, imported, exported, brokered, delivered or installed by Delfino Insulation Company, Inc.

**The New York Subclasses**

33.     The representative Plaintiffs also assert two New York subclasses to coincide with the national classes asserted against the Defendants, and defines these subclasses as follows:

> All owners and residents (past or present) of real property located in the State of New York containing problematic SPF manufactured, sold, distributed, and/or supplied by Lapolla.

> -AND-

> All owners and residents (past or present) of real property located in the State of New York containing the problematic SPF that was sold, distributed, supplied, marketed, inspected, imported, exported, brokered, delivered or installed by Delfino Insulation Company, Inc.

**General Class Allegations and Exclusions from the Class Definitions**

34.     The following Persons shall be excluded from the Class and Subclasses: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

35.     Upon information and belief, the problematic and unreasonably dangerous SPF in Plaintiffs' homes or other structures has been installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members. Therefore, the Class and Subclasses are sufficiently numerous such that the joinder of all members of the Class and Subclasses in a single action is impracticable.

36.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class and/or Subclasses. Among these common questions of law and fact are the following:

a.     whether Defendants' SPF products are problematic and/or unfit for their intended purpose;

b.     whether Defendants tortiously manufactured, labeled, exported, imported, distributed, delivered, procured, supplied, inspected, installed, marketed, labeled and/or sold problematic SPF products;

c.     whether Defendant Lapolla inadequately trained and supervised their "approved" and authorized distributors/installers and provided inadequate training materials and processes;

d.     whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

e.     whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct

37.     The legal claims of named Plaintiffs are typical of the legal claims of other Class and Subclass Members. Additionally, for each of the subclasses that named Plaintiffs seek to

participate in, the legal claims of the named Plaintiffs are typical of the legal claims of other Subclass Members. Named Plaintiffs have the same legal interests and need for legal remedies as other Class and/or Subclass Members.

38.    The named Plaintiffs are adequate representatives of the Class and Subclasses in which they participate, together with their legal counsel, and they will fairly and adequately protect the interests of Class and Subclass Members.  Named Plaintiffs have no known conflicts with the Class or Subclasses and is committed to the vigorous prosecution of this action.

39.    The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.  Counsel will fairly and adequately protect the interests of the Classes and/or Subclasses.

40.    The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(l) because prosecuting separate actions by or against individual Class and/or Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass member that would establish incompatible standards of conduct for the party opposing the Class and Subclass; or adjudications with respect to individual Class and Subclass members that, as a practical matter, would be dispositive of the interests of the other Class and Subclass members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

41.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class and/or Subclass, so that final injunctive relief is appropriate respecting the Class and/or Subclass as a whole.

42.    A class action is superior in this case to other methods of dispute resolution. The Class and Subclass members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class and Subclass Members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiff's legal claims are properly certified pursuant to Rule 23(b)(3).

43.    The issues particularly common to the Class and Subclass members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R, Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

44.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

45.    Defendant Lapolla owed a duty to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, distributing, delivering, procuring, supplying, providing training for, inspecting, marketing, labeling, and/or selling its SPF product, and to exercise reasonable care to prevent the SPF from having the defects set forth herein.

46.    Defendant Lapolla also owed a duty to Plaintiffs and Class Members to exercise reasonable care in adequately warning of their failure to do the same; to instruct the Plaintiffs and Class Members of the defects associated with its SPF products; to not misrepresent that SPF was safe for its intended purpose when, in fact, it is not; and to not conceal information from

Plaintiffs and Class Members regarding reports of adverse effects associated with SPF installation.

47.     Defendant Lapolla also owed a duty to Plaintiffs and Class Members to properly train, or to ensure the proper training of, their employees, representatives, agents, and/or certified distributors/installers in the formulation and installation process of the subject SPF prior to the application of SPF insulation because Lapolla knew or should have known that the volatile chemical processes involved in installation required strict controls.

48.     Defendant Lapolla knew or should have known that its wrongful acts and omissions would result in harm in the manner set forth herein.

49.     Defendant Lapolla breached its duty to exercise reasonable care in designing, manufacturing, distributing, delivering, providing training for, procuring, supplying, inspecting, installing, marketing, labeling and/or selling its SPF by negligently releasing into the marketplace an SPF product that it knew was defective, unreasonably dangerous, and unfit for its intended purposes.

50.     Defendant Lapolla likewise breached its duty to exercise reasonable care in warning Plaintiffs and Class Members about its SPF products by failing to warn them about the unreasonably dangerous toxins in its SPF that would off-gas during and after installation and create a hazardous environment inside their homes.  Defendant Lapolla, through the exercise of reasonable care, knew or should have known the nature of its problematic SPF and the post-installation adverse effects that it could have on the property and bodies of Plaintiffs and Class Members, and failed to provide adequate warnings about such adverse effects.

51.     Defendant Lapolla breached its duty to Plaintiffs and Class Members to exercise reasonable care to properly train or ensure the training of its employees, representatives, agents,

and/or certified distributors/installers in the formulation and installation process of the subject SPF prior to the application of the SPF, as no such proper training occurred.

52.    Defendant Lapolla breached its duty to exercise reasonable care to timely remove and/or recall SPF from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with its SPF product, upon learning it had been sold and/or distributed in an unreasonably dangerous condition.

53.    Given the defect in the Defendant Lapolla's SPF, Defendant Lapolla knew or should have known that its SPF product could, and would, cause harm, damages, and/or personal injuries to Plaintiffs and Class Members.

54.    As homeowners and/or residents of real property, Plaintiffs and Class Members were consumers who might reasonably be foreseen to use, consume, or be affected by Defendant Lapolla's SPF products.  By having Defendant Lapolla's SPF products installed in the their homes as insulation systems, Plaintiffs and Class Members put those products to a reasonably foreseeable use.

55.    As a direct and proximate cause of Defendant Lapolla's acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

56.    Defendant Delfino owed a duty to Plaintiffs and Class Members to exercise reasonable care in distributing, delivering, procuring, supplying, inspecting, testing, installing, marketing, and/or selling Lapolla's SPF to consumers.

57.    Defendant Delfino also owed a duty to Plaintiffs and Class Members to exercise reasonable care to instruct the Plaintiffs and Class Members of the defects associated with SPF; to not misrepresent that SPF was safe for its intended purpose when, in fact, it is not; and to not

conceal information from Plaintiffs and Class Members regarding reports of adverse effects associated with SPF installation.   Among these, Defendant Delfino owed a duty to warn Plaintiffs and Class Members, as home occupants, to leave their homes for a period of time during and after installation.

58.   Defendant Delfino also owed a duty to Plaintiffs and Class Members to exercise reasonable care to properly train, or to ensure the proper training of, their employees, representatives, and agents in the formulation and installation process of the subject SPF prior to the application of SPF insulation, because Delfino knew or should have known that the volatile chemical processes involved in its installation required strict controls.

59.   Defendant Delfino knew or should have known that its wrongful acts and omissions would result in harm in the manner set forth herein.

60.   Defendant Delfino breached its duty to exercise reasonable care in distributing, delivering, training, procuring, supplying, inspecting, installing, marketing, labeling and/or selling the subject SPF by distributing, delivering, procuring, supplying, inspecting, installing, marketing, labeling and/or selling an SPF product that it knew was defective, unreasonably dangerous, and unfit for its intended purposes.   Defendant Delfino also breached this duty by negligently installing Defendant Lapolla's SPF product in Plaintiffs' home under improper temperature conditions.

61.   Defendant Delfino likewise breached its duty to Plaintiffs and Class Members to exercise reasonable care in warning Plaintiffs and Class Members about the defects associated with SPF by failing to warn them about the unreasonably dangerous toxins in Defendant Lapolla's SPF that would off-gas during and after installation and create a hazardous environment inside their homes.   Defendant Delfino, through the exercise of reasonable care,

knew or should have known the nature of Defendant Lapolla's problematic SPF and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members, and failed to provide adequate warnings about such adverse effects.  Further, Defendant Delfino failed to instruct Plaintiff Kristine Markey and her children to leave their home during installation of the SPF.  As a result, Plaintiff and her children remained in the home during installation and were exposed to the toxic chemicals emitted by the SPF.

62.    Defendant Delfino breached its duty to Plaintiffs and Class Members to properly train or ensure the training of its employees, representatives, and/or agents in the formulation and installation process of the subject SPF prior to the application of the SPF, as no such proper training occurred.

63.    Given the defect(s) in the Defendant Lapolla's SPF, Defendant Delfino knew or should have known that its SPF product could, and would, cause harm, damages, and/or personal injuries to Plaintiffs and Class Members.

64.    As a direct and proximate cause of Defendant Delfino's acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
### STRICT LIABILITY – DESIGN DEFECT
### (All Defendants)

65.    Plaintiffs adopt and restate paragraphs 1–43 as if fully set forth herein.

66.    At all times relevant hereto, Defendant Lapolla was in the business of designing, manufacturing, distributing, delivering, training, procuring, supplying, inspecting, marketing, labeling, installing, and/or selling SPF.

16

67.     At all times relevant hereto, Defendant Delfino was in the business of distributing, delivering, procuring, supplying, inspecting, testing, installing, marketing, and/or selling SPF.

68.     Defendants Lapolla and Delfino placed the subject SPF, including that installed in the homes of Plaintiffs and Class Members, into the stream of commerce.

69.     Defendants knew that the subject SPF would be installed without inspection by homeowners and residents (ultimate consumers).

70.     Defendants intended that the SPF reach the ultimate consumers, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

71.     When installed in Plaintiffs' and Class Members' homes, the components of the subject SPF were in substantially the same condition as they were in when Defendant Lapolla manufactured, sold, and delivered it.

72.     Upon installation in the homes of Plaintiffs and Class Members, the components of the subject SPF were in substantially the same condition as they were in when Defendant Delfino installed and/or applied it.

73.     At all times relevant hereto, the subject SPF was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.  Plaintiffs and Class Members therefore used the SPF in a manner reasonably foreseeable to the Defendants.

74.     The subject SPF was not misused or altered by any third parties.

75.     Defendant Lapolla's SPF was improperly manufactured, designed, inspected, tested, marketed, distributed, procured, labeled, installed, and sold.

76.     Defendant Lapolla's SPF was defectively designed because it emits, during installation and post-installation, unreasonably dangerous, high levels of VOCs, including carcinogens, even when installed in accordance with Defendant Lapolla's installation and application instructions.  Individuals who are exposed to these unreasonably dangerous toxins face a substantial likelihood of developing headaches and other neurological issues, and eye, nose, and throat irritations as well as respiratory issues.  The SPF is also defectively designed because feasible alternative insulation designs exist.

77.     Defendant Lapolla's negligence in manufacturing, designing, inspecting, testing, marketing, distributing, procuring, supplying, labeling, and selling its SPF rendered it unsafe and unreasonably dangerous for its intended use by and to Plaintiffs and Class Members.

78.     Plaintiffs and Class Members were not aware of the unreasonably dangerous propensities and problematic condition of the SPF, nor could Plaintiffs and Class Members, acting as reasonably prudent people, discover that Defendants' SPF was problematic, as set forth herein, or perceive its danger.

79.     Defendant Lapolla's problematic SPF was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

80.     The problematic SPF's benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger they faced as a result of exposure to the SPF's off-gassing of unreasonably dangerous carcinogens, VOCs, and/or other toxins.

81.     After Defendant Delfino's installation of Defendant Lapolla's SPF in Plaintiffs' home in March 2012, Plaintiff Kristine Markey suffered personal injury in the form headaches and numbness in parts of her body.  Plaintiffs also spent thousands of dollars on post-installation

air quality testing for their home, and the SPF's continued emission of toxins has completely prohibited the Plaintiffs' use and enjoyment of a large portion of their home.

82.     The unreasonably dangerous propensities of the subject SPF were the direct and proximate cause of damages and/or personal injuries to Plaintiffs and Class Members.

## COUNT III
## STRICT LIABILITY – FAILURE TO WARN
### (All Defendants)

83.     Plaintiffs adopt and restate paragraphs 1- 43 and 66-74 as if fully set forth herein.

84.     Plaintiffs and Class Members were not aware of the unreasonably dangerous propensities and problematic condition of the SPF, nor could Plaintiffs and Class Members, acting as reasonably prudent people, discover that Defendants' SPF was problematic, as set forth herein, or perceive its danger.

85.     Defendant Lapolla had a duty to adequately warn Plaintiffs and Class Members about the Defects and hazardous propensities of its SPF products.

86.     Defendant Lapolla failed to adequately warn Plaintiffs and Class Members about the unreasonably dangerous toxins in its SPF products that would continue to off-gas during and after installation and create a hazardous environment inside their homes.  Defendant Lapolla further failed to warn Plaintiffs and Class Members that they should vacate their home during the installation of its SPF, causing them to be exposed to the release of harmful toxins during the application process.  Defendant Lapolla's warnings were inadequate because its marketing and information materials failed to warn of the risk of personal harm and property damage posed by the off-gassing of its SPF products.

87.     Defendant Delfino had a duty to adequately warn Plaintiffs and Class Members about the Defects and hazardous propensities of Lapolla's SPF products.

88.     Defendant Delfino failed to adequately warn Plaintiffs and Class members about the unreasonably dangerous toxins in Lapolla's SPF products that would off-gas during and after installation and create a hazardous environment inside their homes.  Defendant Delfino also failed to warn Plaintiffs and Class Members that they should vacate their homes during the installation of Lapolla's SPF, causing them to be exposed to the release of harmful toxins during the application process.

89.     Both Defendants, through the exercise of reasonable care, knew or should have known the nature of Defendant Lapolla's problematic SPF and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members, and failed to provide adequate warnings about such adverse effects.

90.     Defendant Lapolla's problematic SPF was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

91.     The problematic SPF's benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger they faced as a result of exposure to the SPF's off-gassing of unreasonably dangerous carcinogens, VOCs, and/or other toxins.

92.     After Defendant Delfino's installation of Defendant Lapolla's SPF in Plaintiffs' home in March 2012, Plaintiff Kristine Markey suffered personal injury in the form of headaches and numbness in parts of her body.  Plaintiffs also spent thousands of dollars on air quality testing for their home after the installation of Defendant Lapolla's SPF, and the SPF's odor and continued emission of toxins has completely prohibited the Plaintiffs' use and enjoyment of a large portion of their home.

93.     The harmful and dangerous propensities of Defendant Lapolla's SPF, as well as Defendants' failure to adequately warn Plaintiffs and Class Members of those propensities,

rendered the SPF unreasonably dangerous and were the direct and proximate cause of damages and/or personal injuries to Plaintiffs and Class Members.

**COUNT IV**
**BREACH OF IMPLIED WARRANTIES**
**(All Defendants)**

94.     Plaintiffs adopt and restate paragraphs 1–43 as if fully set forth herein.

95.     At all times relevant hereto, Defendant Lapolla was a merchant who manufactured, distributed, sold, and/or supplied SPF products.

96.     At all times relevant hereto, Defendant Delfino was a merchant who distributed, sold, supplied, and/or installed SPF products.

97.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

98.     At the time Defendants utilized, supplied, inspected, and/or sold the subject SPF for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the SPF would be installed in structures owned by Plaintiffs and Class Members for use as a building insulation material/system, and expressly or impliedly warranted the product to be fit for that use.

99.     Defendants placed the subject SPF products into the stream of commerce in a problematic condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

100.    The reasonable expectations for the performance of Lapolla's SPF when used in the customary, usual, and reasonably foreseeable manner are that it would be an insulation system fit for use in a residential setting.

101.    Defendant Lapolla's SPF is problematic, not of fair and average quality, and unfit for its ordinary intended purpose because of the hazardous and damaging side effects of the odor and toxins that it off-gasses during and after installation and because it inhibits the full use and enjoyment of consumers' homes after installation and necessitates the SPF's complete, costly removal, rendering it harmful to health and inconvenient such that Plaintiffs and Class Members would not have purchased/installed it had its side effects been disclosed by the Defendants.

102.    Defendants thus breached the implied warranty of merchantability associated with their sale of the subject SPF to Plaintiffs and Class Members, because the SPF was not minimally safe for its expected purpose and did not meet the expectations for the performance of an insulation product when used in the customary, usual, and reasonably foreseeable manner in residential settings.

103.    As sellers is in the business of manufacturing, selling, and/or installing specialized insulation goods, Defendants also had reason to know that Plaintiffs and Class Members were purchasing their SPF for a particular purpose and were relying on their expertise in selecting appropriate products.  The Defendants breached their implied warranty of fitness for a particular purpose because the SPF products' off-gassing of odors and toxins rendered them unfit and unsafe for the particular purposes for which they were sold, i.e. to be installed in the homes of Plaintiffs and Class Members as durable insulation systems.

104.    Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

105.    As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have suffered harm and damages and/or personal injuries as described herein.

## COUNT V
## BREACH OF EXPRESS WARRANTIES
### (Defendant Lapolla)

106.     Plaintiffs adopt and restate paragraphs 1–43 and 94-100 as if fully set forth herein.

107.     Defendant Lapolla made several express warranties about its SPF products by making many affirmations of fact or promise about its SPF products and by providing descriptions of those products which became part of the basis of the bargain of Plaintiffs' and Class Members' purchases of those products.

108.     Defendant Lapolla expressly warranted to Plaintiffs and Class Members that its SPF products were safe and non-toxic such that they could remain in their homes during the installation of such products.  Prior to the installation of the Lapolla SPF product in Plaintiffs' home in March 2012, Plaintiffs saw a Lapolla brochure which depicted a family sitting in a living room while a spray foam installer applied Lapolla's SPF in the background, suggesting that it is safe to remain in the room during installation.  This brochure influenced Plaintiffs' decision to purchase and have installed a Lapolla SPF product, and as such became a part of the basis of the bargain of Plaintiffs' purchase.

109.     In its marketing materials and on its website, Defendant Lapolla also warrants that its spray foam insulation systems "contribute to healthier environments, the reduction of energy consumption, and sustainable buildings."  Defendant Lapolla further warrants that its "FOAM-LOK" SPF will "Lock in Energy Savings For Life" and that "the economic value of spray foam insulation lasts over the lifetime of a building."  Defendant Lapolla also warrants that its "FOAM-LOK" SPF "helps stabilize the indoor humidity levels to minimize moisture and condensation," and that having it installed "can also add years to the life expectancy of a home, plus contribute to a healthier indoor environment."

110.     In its Foam-Lok SPF marketing materials and on its website, Defendant Lapolla also warrants that "Open-cell foam insulation is a performance upgrade over conventional insulation that leads to energy efficiency, improved occupant comfort, a cleaner indoor environment and greater noise reduction for building/homeowners."

111.     These warranties were material to and influenced Plaintiffs' and Class Members' decision to purchase Defendant Lapolla's SPF product, and as such became a part of the basis of the bargain of their purchases.

112.     These warranties were untrue in that Defendant Lapolla's SPF emits VOCs and other toxins during and after installation which create a hazardous indoor environment, causing harm to persons and property, and necessitating the complete, costly removal of the SPF.

113.     Defendant Lapolla had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

114.     As a direct and proximate cause of Defendant Lapolla's breach of warranties, Plaintiffs and Class Members have suffered harm and damages and/or personal injuries as described herein.

## COUNT VI
## UNJUST ENRICHMENT
### (All Defendants)

115.     Plaintiffs adopt and restate paragraphs 1–43 as if fully set forth herein.

116.     Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendant Lapolla's problematic SPF, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits at the expense of Plaintiffs and Class Members.

117.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

118.    There exists a sufficiently close relationship between the Plaintiffs and Class Members and Defendant Lapolla because in deciding to purchase a Lapolla SPF product, the Plaintiffs and Class Members relied on the statements and representations Lapolla made in its advertising and marketing materials concerning those products.

119.    There exists a sufficiently close relationship between the Plaintiffs and Class Members and Defendant Delfino because Delfino installed the Lapolla SPF product in the homes of the Plaintiffs and Class Members.

120.    Defendants, by the deliberate and tortious conduct complained of herein which induced Plaintiffs and Class Members to purchase and have installed in their homes a Lapolla SPF product, have been unjustly enriched in a manner which warrants restitution.

<u>COUNT VII</u>
**VIOLATION OF CONSUMER PROTECTION ACTS**
**(All Defendants)**

121.    Plaintiff adopts and restates paragraphs 1–43 as if fully set forth herein.

122.    This is a claim for relief under *New York General Business Law §349* and *§350*, as well as the various Consumer Protection Acts of the jurisdictions in which affected properties of Class Members are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); N.C.G.S. § 75-1.1, *et seq.* (North Carolina Consumer- Protection Act); O.C.G.A. § 10-1-390, *et seq.* (The Georgia Fair Business Practices Act of 1975); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus.

Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act);

and Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act).

123.    The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of problematic SPF constitute violation of the provisions of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts.

124.    The Defendants engaged in the unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce.

125.    The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint were directed at consumers, and were thus likely and reasonably foreseeable to mislead Plaintiffs and members of the Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

126.    The Defendants' conduct was consumer-oriented in that their omissions and marketing representations were intended to convey to consumers that their SPF products are safe, healthy, and energy efficient.

127.    In its marketing materials and on its website, Defendant Lapolla knowingly misrepresents that its SPF systems are "green," "environmentally friendly" products that will provide "energy savings for life" and "contribute to healthier environments, the reduction of energy consumption, and sustainable buildings."   Defendant Lapolla also misrepresents to consumers that its insulation "should add value to: energy savings, sustainability, air quality, safety, durability, and comfort."

128.   Defendant Lapolla further misrepresents to consumers that its "FOAM-LOK" SPF will "Lock in Energy Savings For Life" and that "the economic value of spray foam insulation lasts over the lifetime of a building."  Defendant Lapolla also misrepresents that its "FOAM-LOK" SPF "helps stabilize the indoor humidity levels to minimize moisture and condensation," and that having it installed "can also add years to the life expectancy of a home, plus contribute to a healthier indoor environment."

129.   In its Foam-Lok SPF marketing materials and on its website, Defendant Lapolla also misrepresents that "Open-cell foam insulation is a performance upgrade over conventional insulation that leads to energy efficiency, improved occupant comfort, a cleaner indoor environment and greater noise reduction for building/homeowners."

130.   Both Defendants also engaged in unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce by concealing from Plaintiffs and Class Members material information about the subject SPF, including its hazardous effects and propensities which can cause personal injury and property damage.

131.   The Defendants' misrepresentations or omissions as set forth in this Complaint are misleading in a material way because they relate to matters which are important to consumers that are likely to and did affect the purchasing decisions or conduct of consumers, including Plaintiffs and Class Members regarding Defendant Lapolla's SPF products.

132.   The Defendants' business practices, in concealing material information and in misrepresenting in their advertising, marketing, packaging, and selling SPF as a safe, "green," non-toxic, cost-saving, durable product which "contribute[s] to healthier environments" are unconscionable, unfair, and deceptive acts or practices, in violation of *New York Gen. Bus. Law §349* and *§350* (and other Consumer Protection Acts), in that it (1) offends established public

policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiffs and Class Members who purchased Defendants' SPF system because of Defendants' representations and conduct.

133.    Plaintiffs and Class Members have suffered actual and economic damages as a result of Defendants' violation of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts and are entitled to relief.

134.    As a direct and proximate cause of Defendants' violations of *New York Gen. Bus. Law §349* and *§350* and the various Consumer Protection Acts, Plaintiffs and Class Members have incurred harm and damages as described herein, and are entitled to recover for those damages, including but not limited to, actual and economic damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law, including *New York Gen. Bus. Law §349* and *§350*, and the various Consumer Protection Acts.

<u>COUNT  VIII</u>
**EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**
**(All Defendants)**

135.    Plaintiffs adopt and restate paragraphs 1–48 as if fully set forth herein.

136.    Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

137.    Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if Defendants are not ordered to recall and remove the problematic SPF owned by Plaintiffs and Class Members and replace it with a proper, non-toxic insulation system.

138.    Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that Defendants be ordered to: (1) recall the

problematic SPF; (2) remediate, repair and/or replace the SPF in Plaintiffs' and Class Members' homes or other structures upon proof by the Defendants of the feasibility of such remedy or repair; (3) cease and desist from misrepresenting to the Class and the general public that SPF is not problematic and/or unreasonably dangerous as alleged herein; (4) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with SPF; and (5) create, fund, and support a medical monitoring program.

139.   Until Defendants' problematic SPF has been removed and remediated, Defendants must provide continued air monitoring in the structures owned by Plaintiffs and Class Members.

140.   As a result of Defendants' manufacture, sale, distribution, supply, and/or installation of unfit and defective SPF products that off-gas carcinogens such as Formaldehyde (and other Aldehydes) and other Volatile Organic Compounds ("VOCs") during and after installation, Plaintiffs and Class Members have been exposed to greater than normal levels of hazardous substances and have suffered personal injuries as a result.

141.   The toxic gases/compounds which the subject SPF emits and to which Plaintiffs and Class Members have been exposed are proven unreasonably dangerous.

142.   Exposure to the VOCs and other toxins off-gassed by the subject defective SPF can cause headaches, neurological issues, and respiratory ailments including eye, ear, and throat irritation.  Further, exposure can cause people to become sensitized, or hyper-sensitive, to these chemicals, causing people to suffer severe reactions when exposed to even trace amounts of these chemicals.

143.   Plaintiffs' and Class Members' exposures were caused by the Defendants' negligent or otherwise tortious conduct.

144.     As a proximate result of their exposure to the carcinogens and VOCs emitted by the subject SPF, Plaintiffs and Class Members have developed a significantly increased risk of contracting serious latent diseases, including but not limited to headaches and other neurological issues, and eye, nose, and throat irritations as well as respiratory issues.

145.     The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the problematic and unfit SPF.

146.     Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

147.     The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class and Subclass Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demands upon Defendants jointly and severally for:

a.     an order certifying the case as a class action;

b.     an order certifying the Class and each of the Subclasses;

c.     an order appointing Plaintiffs as the Class Representatives of the Class;

d.     an order appointing undersigned counsel and their firms as counsel for the Class;

e.      actual, compensatory and statutory damages;

f.      punitive damages as allowed by law;

g.      pre and post-judgment interest as allowed by law;

h.      injunctive relief;

i.      an award of attorneys' fees as allowed by law;

j.      an award of taxable costs; and

k.      any and all such further relief as this Court deems just and proper.

Dated:  February 20, 2012

Respectfully Submitted,

MORELLI RATNER PC
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:      (212) 751-9800
Facsimile:      (212) 751-0046

By:   /s David T. Sirotkin_____
          David T. Sirotkin
          dsirotkin@morellilaw.com
          E.D.N.Y. Bar ID: DS4863
          Benedict P. Morelli
          bmorelli@morellilaw.com
          New York Bar No.: BM7597
          David S. Ratner
          dratner@morellilaw.com
          New York Bar No.: DR7758

31

David C. Rash
david@alterslaw.com
Florida Bar No.: 0977764
Jeremy W. Alters
jeremy@alterslaw.com
Florida Bar No.: 111790
Matthew T. Moore
matthew@alterslaw.com
Florida Bar No.: 70034

ALTERS LAW FIRM, P.A.
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:      (305) 571-8550
Facsimile:      (305) 571-8558


AND

Vincent J. Pravato
vince@wolfandpravato.com
Florida Bar No.: 83127
LAW OFFICES OF WOLF & PRAVATO
2101 West Commercial Boulevard
Suite 1500
Fort Lauderdale, Florida 33309
Telephone:      (954) 522-5800
Facsimile:      (954) 767-0960

Attorneys for Plaintiff